

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEONTE, DANIELLE, DANIEL, )
DINAH, AND DEANNA McFADDEN, )
minors, by their parent and next friend, )
Tracy McFadden; KAREN, RODOLFO AND )
KIARA TAPIA, minors, by their parent and )
next friend, Marielena Montoya,[1] )
)
        Plaintiffs, )
) No. 05 C 0760
   v. )
) Judge Robert W. Gettleman
BOARD OF EDUCATION FOR )
ILLINOIS SCHOOL DISTRICT U-46, )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs, minority and limited English proficient ("LEP") students in the Illinois School District U-46 ("District"), filed a four-count putative class action against defendant Board of Education for the District ("Board") alleging that LEP students are suffering from the District's failure to take "appropriate action" to eliminate language barriers, in violation of the Equal Education Opportunity Act of 1974 ("EEOA"), 20 U.S.C. § 1701, et seq. (Count I). Plaintiffs also allege that minority students in the District are currently enduring discriminatory burdens and diminished educational benefits not suffered in the same proportion by white students, in violation of the Fourteenth Amendment to the Constitution (Count II), the Equal Protection Clause of the Illinois Constitution (Count III), and the Illinois Civil Rights Act of 2003, 740 ILCS 23/5(a)(1) (Count IV). This court denied defendant's motion to dismiss plaintiffs' first

---

[1]The Delgado and Garcia plaintiffs named in the first amended complaint voluntarily withdrew from this suit on October 25, 2005.

amended complaint in a Memorandum Opinion and Order dated July 25, 2005. Leslie v. Board of Education for Illinois School Dist. U-46, 379 F. Supp. 2d 952 (N.D.Ill. 2005).

Plaintiffs have filed a motion for class certification pursuant to Fed. R. Civ. P. 23(b)(2). Plaintiffs seek to certify two classes on behalf of: (1) "all Hispanic and African-American [District] students" (the "Minority Class"); and (2) "all current Hispanic [District] students who are receiving English Language Learner ("ELL") services, or who have received ELL services within the past three years" (the "LEP Class").[2] According to plaintiffs, the proposed Minority Class contains approximately 16,000 students, and the proposed LEP Class contains approximately 9,500 students. Tracy McFadden ("McFadden") is the mother and representative of named plaintiffs Deonte, Danielle, Daniel, Dinah, and Deanna McFadden, who are African-American and attend schools within the District. Maria Montoya ("Montoya") is the mother and representative of Karen, Rodolfo, and Kiara Tapia, who are Hispanic LEP students within the District. McFadden and Montoya seek to represent the Minority Class, and Montoya seeks to represent the LEP Class.

Defendant opposes the motion to certify the classes, arguing that the named plaintiffs fail to satisfy the requirements of Rule 23(a) and Rule 23(b)(2). For the reasons stated below, plaintiffs' motion for class certification is denied.

## FACTS

Plaintiffs' first amended complaint alleges a litany of violations of federal and state law by defendant regarding the treatment of Hispanic LEP and African-American students, as

---

[2]In the first amended complaint, plaintiffs describe an additional class of "non-Hispanic LEP students." Plaintiffs state in their motion for class certification that they are seeking certification of an Hispanic LEP class only.

2

detailed more fully in this court's July 25, 2005, opinion. Leslie, 379 F.Supp.2d at 954-958. As the court noted previously, plaintiffs' complaint is needlessly lengthy and unfocused, and contains confusing and potentially conflicting causes of action.

Generally, plaintiffs allege in the first amended complaint that following a referendum vote in 2000 approving school construction, the District implemented a new redistricting plan ("Redistricting Plan"), effective at the start of the 2004-2005 school year. The Redistricting Plan: (1) redefined attendance boundaries; (2) closed two elementary schools, Woodland Heights and Illinois Park Elementary School ("Illinois Park"); (3) opened three elementary schools in new buildings; and (4) opened a new middle school.

According to plaintiffs, all of the new schools were built in "majority" or "predominately" white neighborhoods, there is insufficient capacity in minority neighborhood schools, and the Board was unconcerned that the Redistricting Plan increased the degree of racially identifiable schools. Plaintiffs allege that prior and subsequent to the implementation of the Redistricting Plan, minority and LEP students were harmed by: (1) "the disproportionate student assignment displacement of minority students"[3]; (2) being bused to schools at disproportionate rates and bused further distances than white students; (3) less stability in school assignments for minority students; and (4) fewer educational opportunities for minority students because they are disproportionately assigned to alternative high schools. Plaintiffs also allege that the Redistricting Plan "dramatically" increases racial segregation.

---

[3]Plaintiffs do not explain "student assignment displacement." The court is unclear whether this claim is redundant of plaintiffs' school assignment stability claim or alleges a separate harm. The court is therefore unable to evaluate this claim.

Plaintiffs allege that Hispanic LEP students suffer the following additional conditions: (1) students ready to transition into regular education are held-over in LEP classes because of insufficient seats in regular education classes in minority neighborhood schools; (2) inadequate space in LEP classes in neighborhood schools; (3) segregation from regular education students for "all instruction rather than specific educational subjects and purposes"; and (4) denial of proper access to special education referrals, reviews and services. According to plaintiffs, Hispanic LEP students' ability to overcome language barriers is "interfere[d] with and impede[d] by" the instability of assignments provided to Hispanic LEP students and defendant's failure to provide adequate special education services and an integrated educational environment.

## DISCUSSION

Fed. R. Civ. P. 23, which governs class actions, requires a two-step analysis to determine if class certification is appropriate. First, plaintiffs must satisfy all four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Harriston v. Chicago Tribune Co., 992 F.2d 697, 703 (7th Cir. 1993). These elements are a prerequisite to certification, and failure to meet any one of them precludes certification of a class. Second, the action must also satisfy one of the conditions of Rule 23(b). Joncek v. Local 714 International Teamsters Health and Welfare Fund, 1999 WL 755051, at *2 (N.D. Ill. Sept. 3, 1999) (and cases cited therein). Relevant to the instant case, a class can be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

4

A court evaluating whether a party has met its burden of proving that a class should be certified should not consider the merits of the underlying claim, Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 166 (1974), but it is appropriate to "probe behind the pleadings." General Telephone Company of Southwest v. Falcon, 457 U.S. 147, 160 (1982); see also Szabo v. Bridgeport Machines, Inc., 249 F/3d 672, 676 (7th Cir. 2001) (district court must determine actual conformance with Rule 23(a)).

In the instant case, defendant launches a broad and somewhat scattered attack on plaintiffs' satisfaction of the Rule 23(a) requirements, although defendant's lack of clarity is partially attributable to plaintiffs' flawed pleading and imprecise theories of the case. The gravamen of defendant's opposition to class certification is that while the complaint describes sweeping violations of a variety of federal and state laws, the named plaintiffs' grievances are markedly more limited in scope and in kind. In particular, defendant argues that the deposition testimony of McFadden and Montoya establishes that neither plaintiff has personal knowledge of most of the harms alleged in the first amended complaint, and that they seek the narrow remedy of reopening Illinois Park only. According to defendant, the named plaintiffs therefore cannot satisfy the adequacy or typicality requirements of Rule 23(a).

Defendant asserts that the named plaintiffs also fail the adequacy prong because their narrow grievances create a potential conflict of interest with other putative class members, who purportedly seek broader relief. In addition, defendant challenges the adequacy of plaintiffs' counsel based on the disparity between the complaint and the deposition testimony, and counsel's alleged failure to discuss settlement proposals and other issues with the named plaintiffs. Defendant argues that any speculative classes that McFadden and Montoya may

represent would fail to satisfy the commonality and numerosity requirements of Rule 23(a), and the requirements for an injunctive class under Rule 23(b)(2).

As this court noted in its earlier opinion, named representatives of a putative class must "show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and purport to represent." Leslie, 379 F. Supp. at 958 (quoting Gratz v. Bollinger, 539 U.S. 244, 289 (2003)). This court previously found, based on the allegations in the complaint that included two named plaintiffs who have subsequently withdrawn from the suit, that the named plaintiffs had standing to assert their claims. Id. at 959. Defendant repeats its standing arguments in opposition to class certification, and they are more successful in the current context because they support defendant's argument that the named plaintiffs are not typical of other class members.

Rule 23(a)(3) requires that the claims of the class representatives be typical of the class. The typicality requirement focuses primarily "on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983). Typicality is satisfied if a named plaintiff's claims arise from the same event, practice, or course of conduct that gives rise to the claims of the other class members, and the claims are based on the same legal theory. Keele v. Wexler, 149 F.3d 589, 595 (7th Cir. 1998); Kort v. Diversified Collections Services, Inc., 2001 WL 1617213, at *3 (N.D.Ill. Dec. 17, 2001). The typicality requirement does not require that all of the claims be identical. De La Fuente, 713 F.2d at 232.

Defendant's standing and typicality arguments also overlap in part with Rule 23(a)(4), which requires that the named representatives adequately represent the interests of the class.

This includes the requirement that named plaintiffs have a "sufficient interest in the outcome to ensure vigorous advocacy." Chapman v. Worldwide Asset Management, L.L.C., 2005 WL 2171168, at *4 (N.D.Ill. Aug. 30, 2005). The issues of standing, typicality, and adequacy defy easy separation in this case because of common considerations and arguments. Plaintiffs correctly point out that defendant's standing argument is more properly considered "subsumed...within a discussion of typicality or adequacy of representation." The court need not precisely categorize the defects in plaintiffs' motion for class certification, however, because it is clear that McFadden, Montoya, and their children cannot serve as class representatives. In short, plaintiffs have failed to demonstrate that their claims substantially align with those in the first amended complaint.

Plaintiffs are correct that several of defendant's grounds for opposing class certification are red herrings. Defendant makes much of the fact that both McFadden and Montoya testified at their depositions that the only remedy they seek in this case is the reopening of Illinois Park. Defendant argues that this alone precludes them from representing either class because their claims are not typical. This argument focuses too narrowly on lay-plaintiffs' explanation of the relief they seek. A fair and full reading of the deposition testimony reveals that although McFadden and Montoya emphasize the closing of Illinois Park because that is the school in their neighborhood, their concerns may be representative of those shared by other parents in different neighborhoods and students attending different schools. For example, McFadden and Montoya each claim that the closure was the result of discrimination, which is typical of the putative classes' discrimination claims.

7

The named plaintiffs' focus on Illinois Park, however, does raise questions about their adequacy as class representatives. See, e.g., Amchem Products, Inc. v. Windsor, 521 U.S. 591, 626 (1997) (adequacy requirements of Rule 23(a)(4) not satisfied when "[i]n significant respects, the interests of those within the [proposed] class [were] not aligned."). As defendant points out, Montoya and McFadden each testified that her primary or only concern was the reopening of Illinois Park. This could present a conflict of interest if they would be satisfied with a narrower remedy than that sought by the class.

Defendant's arguments that McFadden and Montoya are inadequate class representatives under Rule 23(a)(4) because they were unable in their depositions to identify the particular legal theories of their claims, such as "segregation," and because they describe themselves as representing Illinois Park parents only, are unavailing. The Seventh Circuit has noted, "[T]he class representative's role is limited. It was found not to be enough to defeat class certification in Surowitz v. Hilton Hotel Corps., 383 U.S. 363, 366 (1966), that the named plaintiff did not understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name, nor even the nature of the misconduct of the defendants." Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, 657 F.2d 890, 896 (7th Cir. 1991).

Despite losing its opening battles, defendant prevails on its ultimate argument that class certification is inappropriate at this stage of the litigation and on the record currently before the court. As discussed below, McFadden and Montoya's claims and interests are, at the most, typical of portions of the class claims only. Such slight alignment between the named class representatives' claims and the class complaint is insufficient to carry plaintiffs' burden to

establish that class certification is warranted. See Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979) (The class action device was designated as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."). In addition, plaintiffs' reply brief does little to clarify its claims. Plaintiffs frequently over-generalize their complaint in an attempt to fit the named plaintiffs' testimony within the class claims, and direct the court to deposition testimony that is, at best, marginally supportive of the class claims. For example, plaintiffs argue that McFadden and Montoya testified "regarding problems in their children's bilingual education and special education." The class claims, however, are significantly more specific. Simply put, there is too much uncertainty about plaintiffs' class claims, the named plaintiffs' claims, and plaintiffs' theory of the case to justify certifying either class at this time.

I.  **Minority Class**

McFadden and Montoya seek to represent the Minority Class, and each filed a nearly identical affidavit in support of her request to be certified as class representative. Relevant to the Minority Class, the affidavit merely states that the purpose of the action is to address defendant's discrimination against Hispanic and African-American students, including constitutional violations "in the area of student assignment." Such a cursory and generic affidavit is insufficient to establish either named plaintiff's typicality or adequacy as a representative of the Minority Class. McFadden and Montoya's deposition testimony offers substantially more detail, and much of that testimony cuts against plaintiffs' motion for class certification.

McFadden's deposition testimony directly contradicts the second Minority Class claim, that minority students are bused to schools at disproportionate rates. McFadden's central transportation-related complaint is that some of her children are not bused to school because they

live within a mile and a half of the school and are thus considered "walkers" for whom no transportation is provided. Other McFadden children have taken buses to school since the closing of Illinois Park, but McFadden testified that their current bus rides are approximately the same length as the ride to Illinois Park, and that their current schools are approximately the same distance from their home as Illinois Park. Neither McFadden's affidavit nor her deposition testimony mentions the fourth Minority Class claim, that minority students are afforded fewer educational opportunities because of disproportionate assignment to alternative high schools. Accordingly, McFadden cannot represent a class pursuing any of these claims.

McFadden's deposition does provide support for the third Minority Class claim regarding the lack of assignment stability for minority students and for the claim that the closing of Illinois Park was discriminatory. The McFadden children were either transferred from Illinois Park after it closed or, in the case of her youngest daughter, were unable to attend Illinois Park at all because of its closure. According to defendant, McFadden's claims cannot be typical of the Minority Class because she is concerned with the closing of Illinois Park alone. As discussed above, this argument asks too much of class representatives, who need not share the identical injury with other class members. De La Fuente, 713 F.2d at 232.

Defendant also asserts that McFadden lacks standing and typicality because during her deposition testimony she specifically disavowed that her children were harmed by the closing of Illinois Park. Defendant's counsel asked McFadden whether each of her children had been "harmed educationally" by the school closing, and McFadden responded in the negative each time. McFadden also testified that none of her children's educational progress had been harmed. On examination by plaintiffs' counsel, however, McFadden clarified that although she does not

have current concerns about her children's education, she had concerns in the past. Similarly, although McFadden testified that she was not aware of "segregation" within the District, she clarified on examination by plaintiffs' counsel that there are racially identifiable schools. A fair and full reading of McFadden's testimony makes clear that she claims that her children attend overcrowded, racially identifiable schools, and that the discriminatory closure of Illinois Park exemplified or exacerbated these problems.

In addition, plaintiffs are correct that it is well-established under the Supreme Court's decision in <u>Brown v. Board of Education</u>, 347 U.S. 483, 495 (1954), and its progeny that the harm of race discrimination is self-evident. Thus, plaintiffs who allege segregation and discrimination need not specifically allege harm. <u>See, e.g.</u>, <u>Bailey v. Patterson</u>, 369 U.S. 31, 33 (1962) (passengers using segregated transportation facilities have standing to enforce their rights to non-segregative treatment).

Montoya also seeks to represent the Minority Class. Like McFadden, her deposition testimony is focused almost exclusively on the closure of Illinois Park, and her claims are typical of some of the Minority Class claims only. Regarding transportation burdens, the second Minority Class claim, Montoya testified that her daughter Kiara must wake up half an hour or more earlier than before the redistricting to ride the bus to a school further from her house than Illinois Park. In addition, all three Tapia siblings, who attend three different schools, have different transportation schedules. Montoya also testified that her son, Rodolfo, lacked stability in his school placement, and attended several different schools during early elementary school. According to Montoya, Kiara, who attended Illinois Park, struggled to adjust to her new school after Illinois Park closed. Montoya's claims are thus typical of the Minority Class claims of

11

unequal transportation burdens and lack of stability in student assignments. Montoya does not have any claims regarding alternative high schools. Montoya did not testify that racial or ethnic segregation increased under the Redistricting Plan, as alleged in the first amended complaint, or even that such segregation existed.

It appears that Montoya and McFadden may be appropriate representatives of a class of minority plaintiffs. They allege that a school in their neighborhood was closed as a result of discrimination, and that their children suffer disproportionate transportation burdens and school assignment instability. The claims pressed by the Minority Class, which is broadly defined as all Hispanic and African-American students in the District, however, go well beyond Montoya and McFadden's claims. In addition, the lack of clarity and seeming contradictions in the first amended complaint and plaintiffs' briefs prevent a proper analysis of the full spectrum of Rule 23(a)'s considerations, including commonality and numerosity, because the contours of the putative class are unclear. Given the uncertainties about the class definition and class claims, sending notice to a class at this point would be premature, confusing to any potential class members, and inefficient. Plaintiffs suggest in a footnote in their reply brief that the Minority Class definition could be narrowed, but fail to suggest an alternate definition. For the reasons discussed above, the court is ill-equipped to reform the class definition. Accordingly, the court denies plaintiffs' motion for class certification of the Minority Class.

## II. LEP Class

Montoya also seeks to represent the LEP Class. Montoya's deposition testimony, however, demonstrates that her claims align with only two of the four claims asserted by the LEP

Class. Accordingly, plaintiffs have failed to demonstrate that she is an adequate or typical representative as required under Rule 23(a).[4]

The first LEP Class claim alleges that LEP students ready to transition into regular education are held-over in LEP classes because of insufficient seats in regular education classes in minority neighborhood schools. Montoya's affidavit, which is nearly identical in substance to McFadden's, states that the "deficiencies in the District's program for LEP students include[]...exiting of students from programs for LEP students." Montoya's deposition testimony, however, contradicts her affidavit and the first LEP Class claim. Montoya testified that she never experienced LEP students being held-over, and had never heard of that happening. To the contrary, she testified that she heard that some students were "thrown into" the regular program too soon. When asked about the segregation of bilingual students from regular education students, the third LEP Class claim, Montoya testified that she had heard about it from other parents but had no personal knowledge of it. Such hearsay is insufficient for a class representative to state a claim, as required to represent the class. Plaintiffs' reply brief does not address either of these claims, and plaintiffs have failed to establish that Montoya is an appropriate representatives of the first and third putative LEP Class claims.

Regarding the second LEP Class claim, Montoya's deposition testimony supports a claim that there are inadequate neighborhood seats for LEP students. She testified that all three of her

---

[4]Plaintiffs argue in their reply brief that the deposition testimony of other putative class members, including Maria Garcia, a former named plaintiff in this case, supports the class claims. While this may be true, the typicality and adequacy analysis focuses on the named plaintiffs, and thus the testimony of other class members if of no moment.

children, who are in LEP classes, travel to schools outside their neighborhood, and that each attends a different school.

Montoya's testimony also addresses special education concerns, which are the basis of the fourth LEP class claim that LEP students are denied proper access to special education referrals, reviews and services.[5] Montoya's son, Rodolfo, required bilingual special education services for a period of time in early elementary school. Montoya testified that to be placed in a bilingual special education class Rodolfo was forced to attend a school outside of the family's neighborhood, and was placed in a classroom with students more severely disabled than he. According to Montoya, when she asked that Rodolfo be changed to another classroom and to a school closer to home, she was informed that he was in the "only bilingual special education class they had." Montoya also testified that she was not kept meaningfully informed about her son's special education services by teachers and administrators, and that many of the forms and other written information provided to her were in English only, which she could not understand.

Beyond these claims, however, Montoya's deposition testimony shares little with the class claims. Plaintiffs state in their brief in support of class certification that with respect to the LEP Class, the "overarching issue" is "whether the District has failed to take 'appropriate action' to eliminate language barriers." Montoya's claims are not typical of such a broad claim. As discussed above, her claims encompass two of the four putative class claims only. In addition, apart from claims regarding the lack of neighborhood LEP seats and bilingual special education services, Montoya disclaims larger concerns with bilingual education services in the District.

---

[5]McFadden also testified that she had concerns about special education services within the district. McFadden, however, is not seeking certification of the LEP Class, which is the only class that asserts special education claims.

Montoya testified that she had no concerns about the bilingual education received by her other two children, who did not require special education services. Montoya states in her affidavit that LEP teacher training is deficient, which generally supports the LEP Class claim regarding insufficient LEP services. Teacher training is not, however, a claim made in the first amended complaint and is not addressed in Montoya's deposition. Even assuming Montoya has a claim regarding teacher training, that is not enough to render her an appropriate class representative given the overall lack of alignment between her claims and the putative LEP Class claims.

As with the Minority Class, Montoya may be able to represent a class of LEP students regarding bilingual special education and school capacity claims. The court, however, declines to sua sponte reform the class definition because it is not aware whether such a class exists, or if it could satisfy the requirements of Rule 23(a). Accordingly, the court denies plaintiffs' motion to certify the LEP Class.

Simply put, too many issues of typicality and standing beset the proposed classes to justify class certification at this time. Because the court determines that plaintiffs have failed to establish that the named representatives are suitable named plaintiffs for either class, it need not decide whether the putative classes satisfy the other requirements of Rule 23(a), including commonality, numerosity, and adequacy of class counsel. It is also unnecessary to address defendant's argument that plaintiffs fail to satisfy the requirements of Rule 23(b)(2).

## CONCLUSION

For the reasons stated above, plaintiffs' motion for class certification is denied. At the status hearing set for March 14, 2006, at 9:00 a.m. plaintiffs are directed to inform the court whether they wish to amend the complaint and seek certification of properly certified classes consistent with this opinion.

**ENTER:** **March 13, 2006**

**Robert W. Gettleman**
**United States District Judge**