IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEONTE, DANIELLE, DANIEL, DINAH, AND DEANNA McFADDEN, minors, by their parent and next friend, Tracy McFadden; KAREN, RODOLFO, AND KIARA TAPIA, minors, by their parent and next friend, Marielena Montoya; EDUARDO BURCIAGA; GRISSELLA, MARIANA, YELITZA, AND JOCELYN BURCIAGA, minors, by their parent and next friend, Grisdela Burciaga; AMBRY AND KASHMIR IVY, minors, by their parent and next friend, Beverly Ivy; JOSE AND KRISTIANNE SIFUENTES, minors, by their parent and next friend, Irma Sifuentes; on behalf of themselves and all other persons similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BOARD OF EDUCATION FOR ILLINOIS SCHOOL DISTRICT U-46, <br><br> Defendant. | No. 05 C 0760 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, minority and limited English proficient ("LEP") students in Illinois School District U-46 ("District"), have filed a four-count putative class action[1] against defendant Board of Education for the District ("Board"). Plaintiffs' second amended complaint alleges that minority students in the District are currently enduring discriminatory burdens and diminished

---

[1]The court denied plaintiffs' motion for class certification based on plaintiffs' first amended complaint. Because the second amended complaint involves different plaintiffs (two families have withdrawn, and three new families have joined the suit), the court reserves judgment as to whether this may later be certified as a class action.

educational benefits not suffered in the same proportion by white students, in violation of the Fourteenth Amendment to the Constitution (Count I), the Equal Protection Clause of the Illinois Constitution (Count II), and the Illinois Civil Rights Act of 2003, 740 ILCS 23/5(a)(1) (Count III). Plaintiffs also allege that Hispanic LEP students are suffering from the District's failure to take "appropriate action" to eliminate language barriers in violation of the Equal Education Opportunity Act of 1974 ("EEOA"), 20 U.S.C. § 1701 et seq. (Count IV).

Defendant has filed a motion to dismiss pursuant to Fed. R. Civ. P. 8(a), 12(b)(6), and 20(a), arguing that plaintiffs fail to: 1) state a short and plain statement of their claims; 2) state a claim upon which relief can be granted; and 3) meet the requirements for joinder of the three new families. For the reasons stated below, defendant's motion to dismiss is granted in part and denied in part.

## FACTS[2]

Plaintiffs' second amended complaint is lengthy and includes detailed factual allegations, historical information, and statistics. The following is a summary of facts relevant only to the motion to dismiss.

Plaintiffs are Hispanic and African-American students (and their parents as next friends) at elementary, middle, and high schools in the District. Nine Hispanic plaintiffs receive LEP services, and two of these nine Hispanic plaintiffs receive both LEP and special education services. One African-American plaintiff receives special education services, and one former African-American plaintiff attends an alternative high school in the District. Defendant District

---

[2]The facts recited herein are those alleged in the complaint which, for purposes of a Rule 12(b)(6) motion, the court accepts as true. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

is an Illinois school district operating in Cook, DuPage, and Kane Counties and the communities of Bartlett, Carol Stream, Elgin, Hanover Park, Hoffman Estates, Schaumburg, South Elgin, St. Charles, Streamwood, Wayne, and West Chicago. There are seven members on the Board of Education for the District. There are currently no Hispanic board members, and there have been no Hispanic board members during the time period referenced in the complaint. The Board currently has one African-American member, as it did during the time period referenced in the complaint.

During the 2004-05 school year, the District's total enrollment was approximately 38,429 students in 54 schools. Of these students, 46.5% were white, 38.6% were Hispanic, 7.3% were African-American, and 7.0% were Asian or Pacific Islander. 36.5% of all students were low income, and 15.2% were enrolled in LEP services.[3]

Plaintiffs allege that from the mid-1970s through the end of the 2003-04 school year defendant closed schools in minority neighborhoods, failed to build sufficient additions onto schools in minority neighborhoods to accommodate rising enrollment, and failed to build new schools in minority neighborhoods, despite stable or increasing populations in these areas. In 2000, voters within the District approved a referendum for new school construction. Based on this referendum, defendant implemented a new redistricting plan ("Redistricting Plan"), effective at the beginning of the 2004-05 school year. This plan consisted of: 1) strict neighborhood attendance boundaries; (2) closing two elementary schools, Woodland Heights and Illinois Park Elementary School ("Illinois Park"); 3) opening three new elementary schools; and 4) opening a

---

[3]This percentage, as provided by the Illinois State Board of Education "2005 District Report Card" for District U-46, is significantly lower than the percentage of students reported as enrolled in LEP services during the 2003-04 school year, which was 24.6%.

new middle school. Plaintiffs allege that all four new schools were constructed in predominately white neighborhoods. Plaintiffs also allege that despite some school additions constructed in minority neighborhoods, these schools remained inadequate to support current student capacity.

Prior to implementing the Redistricting Plan, defendant retained Jerome McKibben of Gann-McKibben Demographic Consulting to conduct a demographic study of the District. Plaintiffs allege that defendant instructed Mr. McKibben not to analyze racial and ethnic information in connection with his analysis, despite information from defendant's counsel that race and ethnicity were permissible and legitimate factors for review under a redistricting effort. Despite the existence of schools in predominately white neighborhoods with declining enrollment, Mr. McKibben recommended the closure of Woodland Heights and Century Oaks, two schools with stable or increasing enrollment in or near minority neighborhoods.

Two weeks before adopting the Redistricting Plan, the Board decided not to close Century Oaks, a school with a sizable white population. It decided instead to close Illinois Park, an elementary school with a predominantly minority population and LEP services for students in grades K through 6. Plaintiffs assert that during the development and approval process of the Redistricting Plan, the Board ignored protests from the community, including officials from the City of Elgin, the editorial boards of two newspapers, the District teachers' union, and several members of the District's Citizen Advisory Council.

Plaintiffs allege that while the Redistricting Plan reduces the busing of minority students, including Hispanic students receiving LEP services, it creates numerous other problems by "permitting students living in white neighborhoods to almost exclusively reap the benefits of the new construction." The closing of Illinois Park, an elementary school offering LEP services,

4

increased crowding of LEP programs in other schools, which are found in minority neighborhoods. This crowding has led to transportation and placement instability problems for the students who receive these services. As of the 2004-05 school year, approximately 50% of LEP students in the District are involuntarily transported out of their neighborhood schools to receive LEP services elsewhere. Six named plaintiffs, from two families, would have attended Illinois Park had it remained open; all six are now assigned to elementary schools outside their neighborhoods. Three of these plaintiffs, the Montoya (Tapia) children, are siblings who receive LEP services; one of these siblings also requires special education services. The three other plaintiffs, the McFaddens, also a group of siblings, face additional difficulties. Two of the three siblings are mandatorily assigned to two different elementary schools. The remaining sibling, who receives special education services, has been mandatorily reassigned four times in five years.

In addition to instability in school assignments, denial of assignments to schools in their own neighborhoods, assignment to overcrowded schools, unequal transportation burdens, and the closure of schools in predominantly minority neighborhoods, plaintiffs allege several other failures on the part of the District. Plaintiffs allege that defendant is deficient in the provision of LEP services, including: 1) denial of proper access to education referrals, evaluations, and services; 2) denial of timely and appropriate identification of students requiring LEP services; 3) removal of students from LEP services prior to achieving proficiency in English; 4) denial of sufficient information to plaintiffs' parents for informed consent to remove their children from LEP services; and 5) denial of assignments to neighborhood schools for Hispanic LEP students.

5

Plaintiffs note that as recently as March 22, 2006, the Illinois State Board of Education identified numerous violations in defendant's LEP implementation that required corrective action.

Plaintiffs also allege widespread race discrimination. All named plaintiffs assert that their children are required to attend school in a district that maintains racially identifiable schools.[4] In their response to the instant motion, plaintiffs state that they are not "bringing a claim for racially identifiable schools...[T]he allegations of racially identifiable schools, along with within-school segregation and discriminatory discipline, are facts probative of a discriminatory environment, and therefore, of discriminatory intent with respect to the actual areas of school operations challenged in this case."

One named plaintiff, Eduardo Burciaga, alleges that he has been the victim of race discrimination and that school administrators have ignored his family's complaints. Several plaintiffs, including the Burciagas and the Sifuenteses, allege that they have been subjected to heightened discipline because of their race.

## DISCUSSION

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal notice pleading requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." Scott v.

---

[4]Plaintiffs defined "racially identifiable schools" in their first amended complaint, but not the second amended complaint. A school is identified in the first amended complaint as "minority" when 40% or fewer of its students are white; a school is identified as "majority" when 70% or more of its students are white.

City of Chicago, 195 F.3d 950, 951 (7th Cir. 1999). When ruling on a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Szumny v. Am. Gen. Fin., Inc., 246 F.3d 1065, 1067 (7th Cir. 2001).

**I. Joinder**

The court will first consider defendant's motion to dismiss under Fed. R. Civ. P. 20(a) for failure to join additional plaintiffs properly. Defendants claim that plaintiffs added to the second amended complaint do not share enough in common with existing plaintiffs to warrant joinder. Fed. R. Civ. P. 20(a) "imposes two requirements for proper joinder: (1) the right to relief must be asserted by each plaintiff or defendant and must arise out of the same transaction, occurrence or series of transactions and (2) some question of law or fact common to all the parties must arise in the action." Rowell v. Voortman Cookies, Ltd., 2005 WL 2266607, *3 (N.D. Ill. 2005). The court has discretion to allow joinder, taking into account efficiency, convenience, consistency, and fundamental fairness. Id. Further, "joinder of claims, parties, and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966).

The Montoya (Tiapa) and McFadden families were named plaintiffs as of the filing of the first amended complaint. The Burciaga, Ivy, and Sifuentes families joined the second amended complaint.[5] Plaintiffs assert two putative sub-classes: 1) minority students in the District, and 2) Hispanic students receiving LEP services from the District. All named plaintiffs are part of this

---

[5] As discussed below, because Ashley Ivy withdrew as a plaintiff from the case on June 15, 2006, the court will not consider any claims specific only to her in ruling on the motion to dismiss.

first sub-class; named plaintiffs in the second sub-class include the Montoyas, the Burciagas, and the Sifuentes families.

The first putative sub-class alleges race discrimination by defendant based on defendant's maintenance of racially identifiable schools, school assignment, and overcrowding. Such allegations arise out of the same series of occurrences–the District's course of conduct prior to and after the implementation of the Redistricting Plan–and therefore warrant joinder of the new plaintiffs.

The second putative sub-class alleges deficiencies in defendant's provision of LEP services. Again, these allegations arise out of a continuous course of conduct. Although plaintiffs have differing concerns regarding LEP, each issue stems from defendant's decision-making concerning the provision of LEP services to students in the District. Because plaintiffs meet the standard under Fed. R. Civ. P. 20(a) to permit joinder of these new families, the court declines to dismiss the second amended complaint for improper joinder of new plaintiffs.

**II. Fed. R. Civ. P. 8(a)**

Defendants ask the court to dismiss plaintiffs' complaint for failure to meet the requirements of federal notice pleading. Fed. R. Civ. P. 8(a) requires a plaintiff to set forth a "short and plain statement of the claim" upon which plaintiff bases his or her cause of action. A statement is sufficient if it puts defendant on notice of the principal facts and claims. Hoskins v. Poelstra, 320 F.3d 761, 764 (2003). Dismissal of a complaint is proper only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claims that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The "suit should not be

8

dismissed if it is possible to hypothesize the facts, consistent with the complaint, that would make out a claim." Graehling v. Village of Lombard, Ill., 58 F.3d 295, 297 (7th Cir. 1995).

The court agrees with defendant that plaintiffs' second amended complaint is wordy and "unnecessarily lengthy," despite two previous admonitions by the court to shorten it. The complaint, though, is not, as defendant suggests, "incomprehensible." Despite its length, plaintiffs' complaint gives defendant sufficient notice of the claims against it. For this reason, the court denies defendant's motion to dismiss based on Fed. R. Civ. P. 8(a).[6]

**III. Fed. R. Civ. P. 12(b)(6)**

Defendant asks the court to dismiss plaintiffs' second amended complaint based on lack of standing and a failure to state a claim as to each of plaintiffs' four counts. The court will analyze each allegation in turn.[7]

Standing

Defendants allege that none of the named plaintiffs has standing because no plaintiff can allege an injury in fact. As in defendant's motion to dismiss plaintiffs' first amended complaint,

---

[6]The court assumes, based on defendant's comments regarding the length of plaintiffs' complaint, that defendant's answer will present a "short and plain" response to plaintiffs' allegations.

[7]Defendant claims in its motion to dismiss that plaintiffs failed to exhaust their administrative remedies under the Individuals with Disabilities Education Act ("IDEA"). Although plaintiffs make several factual allegations concerning special education, they do not actually bring a claim under IDEA or, for that matter, any claims directly concerning special education. Rather, plaintiffs mention their special education concerns only as they related to their claims of race discrimination. The court therefore does not address defendant's argument regarding administrative remedies under IDEA.

9

defendant's standing argument is based on an over-simplification of plaintiffs' claims and allegations.

To establish standing, a plaintiff must show: (1) injury in fact, meaning an invasion of a legally protected interest that is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of such that the injury is fairly traceable to the defendant's actions; and (3) that a favorable decision is likely to redress the injury. Tobin for Governor v. Ill. State Bd. Of Elections, 268 F.3d 517, 527-28 (7th Cir. 2001) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Sierakowski v. Ryan, 223 F.3d 440, 442-43 (7th Cir. 2000)). Abstract injury is not enough to establish injury in fact; the plaintiff must establish that he has sustained or is immediately in danger of sustaining some direct injury. See City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1993); Tobin, 268 F.3d at 527-28.

In a putative class action, each named plaintiff must allege an injury in fact. See Gratz v. Bollinger, 539 U.S. 244, 289 (2003) (the fact that a "suit may be a class action...adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and purport to represent'") (citations omitted); Payton v. County of Kane, 308 F.3d 673, 682 (7th Cir. 2002) ("Standing cannot be acquired through the back door of a class action.") (citing Allee v. Medrano, 416 U.S. 802, 828-29 (1974) (Burger, C.J., dissenting).

As in previous motions, defendant again alleges that plaintiffs' pleadings have not established an injury in fact. Again, defendant's challenge is unsuccessful. As the Supreme

Court held in Lujan, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" 504 U.S. at 561. Despite defendant's repeated arguments to the contrary, plaintiffs have met their burden to allege an injury in fact under the liberal standard of federal notice pleading.

Plaintiffs allege generally that they are minority students who suffered "harms and burdens resulting from the District's racially discriminatory actions under the District's previous and current student assignment systems and from the District's racially discriminatory acts relating to its provision of educational opportunities." Specifically, plaintiffs in the first sub-class claim that they suffer from racial discrimination in the form of: 1) denial of stability in school assignments; 2) denial of assignments to schools in their neighborhood; 3) assignment to overcrowded schools; 4) unequal transportation burdens; 5) closure of a predominantly minority school in a predominantly minority neighborhood; and 6) denial of adequate LEP services. Plaintiffs in the second sub-class allege deficiencies in the provision of LEP services, including: 1) denial of proper access to special education referrals, evaluations, and services; 2) denial of timely and appropriate identification for LEP services; 3) premature removal from LEP programs and classes or removal from such programs prior to achieving proficiency in English; 4) denial of sufficient information to parents for them to provide informed consent in the exiting of their children from LEP services; and 5) denial of school assignments to neighborhood schools for Hispanic LEP students.

In addition to the allegations set out by all named plaintiffs, the second amended complaint lists claims specific to each defendant. Based on these claims, plaintiffs have met

11

their burden of demonstrating an injury in fact. Plaintiffs have also satisfied the remaining two prongs of the standing test. Plaintiffs clearly allege that defendant's discriminatory practices caused the injuries of which they complain. See Lujan, 504 U.S. at 560. Plaintiffs also seek relief with a substantial likelihood of redressing their injuries, including injunctions against the sale or lease of schools closed by the District and the operation of a racially discriminatory school system. See Dept. of Commerce v. United States House of Reps., 525 U.S. 316, 317 (1999). Accordingly, the court finds that plaintiffs have standing to pursue their claims.

The court does, however, grant defendant's motion to dismiss any allegations in connection with Ashley Ivy's attendance at the District's alternative high school. Ashley has withdrawn as a plaintiff because she graduated from the school in the spring of 2006. Article III of the Constitution requires an actual controversy to exist at all stages of federal court proceedings. Jones v. Sullivan, 938 F.2d 801, 805 (7th Cir. 1991). Further, despite plaintiffs' assertions, Mrs. Ivy may not bring a claim on her daughter's behalf. Because Ashley is no longer a party to the suit, Mrs. Ivy may not bring a claim as Ashley's "next friend," and a parent does not have standing to bring claims in her own right based on conduct experienced by her daughter. See, e.g., Haines v. Metro. Gov't of Davidson County, 32 F. Supp. 2d 991, 1000 (M.D. Tenn. 1998).

Because no other plaintiff attended the alternative high school, no claim alleging an injury regarding that high school remains in the case. Because no plaintiff has standing to challenge defendant's actions in connection with the school, the court grants defendant's motion to dismiss all claims regarding the alternative high school.

Equal Protection Claims (Counts I and II)

Count I of plaintiffs' second amended complaint asserts violations of the Equal Protection Clause of the Fourteenth Amendment to the Constitution, and Count II asserts violations of the Equal Protection Clause of the Illinois Constitution. Defendant first argues that plaintiffs may not make these allegations because they have failed to allege the basic elements of a claim under 42 U.S.C. § 1983. Defendant then argues that plaintiffs have not met their burden in establishing an equal protection claim because they have not shown: 1) unlawful segregation in assignment of students to particular schools; 2) sufficient allegations regarding transportation burdens; or 3) discriminatory intent by defendant.

To state a valid claim under § 1983, "plaintiffs must allege: 1) an express policy, that, when followed, deprives a person of his or her constitutional rights; 2) a widespread practice that, though not authorized by an express policy or written law, 'is so permanent and well settled' as to constitute a 'custom or usage' with the force of law; or 3) an allegation that the constitutional injury was caused by a person with 'final policymaking authority.'" Moore v. Board of Ed. of the City of Chicago, 300 F. Supp. 2d 641, 645 (N.D. Ill. 2004), citing Baxter by Baxter v. Vigo County School Corp., 26 F.3d 728, 734-35 (7th Cir. 1994).

The court disagrees with defendant's argument that plaintiffs have not claimed that the alleged discriminatory actions are the result of a policy, practice, or official action as required under § 1983.. Plaintiffs have alleged not only a widespread practice of discrimination against minority students by defendant, but also that all injuries sustained by plaintiffs were the direct result of decisions made by members of the Board. These Board members are, in fact, an

organization with final policymaking authority. Plaintiffs have therefore met their burden under § 1983.

Defendant next alleges that plaintiffs have not met their burden in establishing a claim of equal protection. The Equal Protection Clause of the Fourteenth Amendment of the Constitution provides that "no state...shall deny any person within its jurisdiction the equal protection of law."[8] While courts ordinarily defer to governmental classifications unless they lack rational justification, classifications that burden "discrete and insular minorities" are "inherently suspect" under the Equal Protection Clause and are subject to "strict" judicial scrutiny. See United States v. Carolene Products Co., 304 U.S. 144, 152 n.4 (1938). Race and national origin are "suspect" classifications triggering strict scrutiny. See City of Cleburne v. Cleburne Living Center, 473 U.S. 432 (1985) (classes based on race, alienage, or national origin receive "strict scrutiny"). Facially neutral state action violates the Equal Protection Clause when the action is intended to have a racial effect and does so. Washington v. Davis, 426 U.S. 229, 240-41 (1976). To establish a prima facie case of educational discrimination under the Equal Protection Clause, a plaintiff must show: 1) racially disparate effects, and 2) discriminatory intent. Keyes v. School Dist. No. 1, Denver, Colorado, et al., 413 U.S. 189, 198 (1973); Johnson v. Bd. of Educ. of Champaign Unit School Dist. #4, 188 F. Supp. 2d 944, 970 (C.D. Ill 2002).

Defendant asserts that plaintiffs have failed to allege any racially disparate effects in their claims regarding school assignments and transportation burdens. Defendant first argues that

---

[8]The Seventh Circuit has held that equal protection challenges based on the Illinois Constitution are interpreted under the same standards as federal equal protection claims. See Smith v. Severn, 129 F.3d 419, 424 n.3 (7th Cir. 1997). The following discussion refers to the Equal Protection Clause of the Fourteenth Amendment of the Constitution, but it applies equally to the Illinois Constitution.

14

plaintiffs have not alleged segregation because they claim only that plaintiffs attend school in a district that <u>maintains</u> racially identifiable schools, not that plaintiffs actually <u>attend</u> racially identifiable schools. Defendant is playing a game of semantics with this argument, and the court is not persuaded by it. As the court noted in its opinion denying defendant's first motion to dismiss, plaintiffs need not allege extreme segregation to state an equal protection claim. <u>Leslie v. Bd. of Educ. for Illinois School Dist. U-46</u>, 379 F. Supp. 2d 952, 963 (N.D. Ill. 2005) (citing <u>Palmer v. Bd. of Educ. of Comm. Unit School Dist. 201-U</u>, 46 F.3d 682, 686 (7th Cir. 1995)). In the instant case, plaintiffs have alleged that they suffered racially disparate effects in school closures and school assignments due to intentional racial discrimination. Such claims are sufficient to allege an equal protection violation.

Defendants also argue that plaintiffs have not made sufficient allegations concerning transportation burdens, because only the Montoya/Tapia children raise the issue of busing. Once again, defendant reads plaintiffs' claims far too narrowly. Although only one family alleges transportation burdens, this issue is only one of a list of complaints brought by plaintiffs concerning defendant's conduct. The fact that not every plaintiff suffered a transportation burden is in no way dispositive of plaintiffs' complaint.

Finally, defendant once again insists that plaintiffs' express allegation of discriminatory intent is insufficient to survive a motion to dismiss. At best, defendant's argument, which is again unsuccessful, represents a fundamental misunderstanding of federal notice pleading and the standard the court applies to a motion of dismiss. The Federal Rules of Civil Procedure require plaintiffs only to plead intent generally. Fed. R. Civ. P. 9(b). Courts have held repeatedly that general allegations of discriminatory intent are sufficient to survive a motion to

dismiss.  See, e.g., Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998); Triad Assocs., Inc. v. Robinson, 10 F.3d 492, 497 (7th Cir. 1993); Council 31, AFSCME v. Ward, 978 F.2d 373, 377 (7th Cir. 1992).  Indeed, the Triad court specifically held that on a motion to dismiss a claim under the Equal Protection Clause, "we require no more from plaintiffs' allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally."  Triad, 10 F.3d at 497.

Defendant admits that plaintiffs allege in their second amended complaint that "the Board's decision to close Illinois Park School was made with discriminatory intent."  Further, plaintiffs complaint contains allegations of "unlawful discrimination against minority students in the U-46 schools," acts by the Board that "discriminated against minority students relative to, but not limited to, student assignment, transportation, school closure, and educational programs," and "discriminatory intent."  Plaintiffs have explicitly alleged racial discrimination, and accordingly, the court denies defendant's motion to dismiss Counts I and II.

Illinois Civil Rights Act of 2003 (Count III)

Under the Illinois Civil Rights Act ("ICRA"), no unit of state, county, or local government shall "exclude a person from participation in, deny a person the benefits of, or subject a person to discrimination under any program or activity on the grounds of that person's race, color, or national origin" or "utilize criteria of methods of discrimination that have the effect of subjecting individuals to discrimination because of their race, color, or national origin."  740 ILCS 23/5(a)(1).  The statute does not reference intent of the allegedly discriminatory party.

16

The ICRA applies only to conduct that took place after January 1, 2004, the effective date of the act. Nicol v. Lavin, 2004 WL 1881786, *7 (N.D. Ill. Aug. 13, 2004).

To state a prima facie claim under the statute, plaintiff must allege that defendant "treated the plaintiffs differently because of their inclusion in an identifiable and constitutionally protected class." Raymond S. v. Sperlik, 2005 WL 3299810, *5 (N.D. Ill. Nov. 30, 2005). Plaintiffs, who are African-American and Hispanic, are entitled to inclusion in a constitutionally protected class based on their race and have alleged discrimination against them based on their race and national origin. Plaintiffs have therefore met their burden of making a prima facie case under this statute. Further, because the court has jurisdiction over plaintiffs' equal protection claims, it may exercise supplemental jurisdiction over plaintiffs' state law claims. The court therefore denies defendant's motion to dismiss plaintiffs' claim under the ICRA.

Equal Educational Opportunity Act (Count IV)

Finally, defendant argues that plaintiffs have not stated a claim as to the Equal Educational Opportunity Act ("EEOA"). Plaintiffs' second amended complaint alleges that defendant violated the EEOA, codified at 20 U.S.C. § 1701 et seq., by failing to provide appropriate and sufficient services for LEP students. Section 1703 provides: "No state shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by...(f) the failure by an education agency to take appropriate action to overcome language barriers that impede equal participation by its students in its educational programs." Section 1706 provides that "an individual denied an equal educational opportunity...may institute a civil action in an appropriate district court of the United States against such parties, and for

such relief, as may be appropriate." Castaneda v. Pickard, 648 F.2d 989, 1007 (5th Cir. 1981). Intent is not a required element of an EEOA claim. Id. As the court set out in its opinion denying defendant's motion to dismiss plaintiffs' first amended complaint, the elements of an EEOA claim are: 1) language barriers; 2) defendant's failure to take appropriate action to overcome these barriers; and 3) a resulting impediment to students' equal participation in instructional programs.

Defendants argue that "only one child even conceivably states an EEOA claim." In fact, each named plaintiff alleged some deficiency with regard to defendant's provision of LEP services. Specifically, plaintiffs allege: 1) denial of proper access to education referrals, evaluations, and services; 2) denial of timely and appropriate identification of students requiring LEP services; 3) removal of students from LEP services prior to achieving proficiency in English; 4) denial of sufficient information to plaintiffs' parents for informed consent to remove their children from LEP services; and 5) denial of assignments to neighborhood schools for Hispanic LEP students. According to the second amended complaint, each named plaintiff alleges at least one of the deficiencies listed above.

Plaintiffs have clearly alleged that they were injured by defendant's failure to take appropriate action to overcome language barriers. They have also alleged that they were impeded from equal participation in educational opportunities because of defendant's conduct. Accordingly, plaintiffs have stated a claim under the EEOA, and the court denies defendant's motion to dismiss this count of plaintiffs' second amended complaint.

## **CONCLUSION**

For the reasons stated above, defendant's motion to dismiss the second amended complaint is granted with respect to any claims regarding the alternative high school.  The court denies defendant's motion to dismiss the second amended complaint as to all other claims.

Defendant is directed to answer the second amended complaint on or before October 23, 2006.  This matter is set for a report on status November 2, 2006, at 9:00 a.m.


**ENTER: October 3, 2006**

_____

**Robert W. Gettleman**
**United States District Judge**