IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEONTE, DANIELLE, DANIEL, DINAH and DEANNA MCFADDEN, minors, by their parent and next friend, Tracy McFadden; KAREN, RODOLFO and KIARA TAPIA, minors, by their parent and next friend, Mariela Montoya; MARIANA, YELITZA and JOCELYN BURCIAGA, minors, by their parent and next friend, Griselda Burciaga; ASHLEY, AMBRY and KASHMIR IVY, minors, by their parent and next friend, Beverly Ivy; and JOSE and KRISTIANNE SIFUENTES, minors, by their parent and next friend, Irma Sifuentes, ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) | No. 05 C 0760 |
| v. ) ) | Judge Robert W. Gettleman |
| BOARD OF EDUCATION FOR ILLINOIS SCHOOL DISTRICT U-46, ) ) ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, minority and limited English proficient ("LEP") students in Illinois School District U-46 ("District"), have filed a four-count putative class action against defendant Board of Education for the District ("Board"). Plaintiffs' second amended complaint alleges that minority students in the District are enduring discriminatory burdens and diminished educational benefits not suffered in the same proportion by white students, in violation of the Fourteenth Amendment to the Constitution (Count I), the Equal Protection Clause of the Illinois Constitution (Count II), and the Illinois Civil Rights Act of 2003, 740 ILCS 23/5(a)(1) (Count III). Plaintiffs also allege that Hispanic LEP students are suffering from the District's failure to

take "appropriate action" to eliminate language barriers in violation of the Equal Education Opportunity Act of 1974 ("EEOA"), 20 U.S.C. § 1701 et seq. (Count IV).

This court denied defendant's motion to dismiss plaintiffs' first amended complaint in a Memorandum Opinion and Order dated July 25, 2005. Leslie v. Board of Education for Illinois School Dist. U-46, 379 F. Supp. 2d 952 (N.D. Ill. 2005). This court then denied plaintiffs' first motion for class certification in a Memorandum Opinion and Order dated March 13, 2006. McFadden v. Board of Education for Illinois School Dist. U-46, 2006 WL 681054 (N.D. Ill. Mar. 13, 2006). That motion sought to certify two classes: (1) "all current Hispanic and African-American [District] students" (the "Minority class"); and (2) "all current Hispanic U-46 students who are receiving English Language Learner ("ELL") services, or who have or who have received ELL services within the past three years (the "LEP class")." The court found significant problems with the named plaintiffs' typicality and adequacy as representatives of the proposed classes. Plaintiffs then filed a second amended complaint, which defendants moved to dismiss. This court denied defendant's motion in part on October 3, 2006.[1] McFadden v. Board of Education for Illinois School Dist. U-46, unpub., 05 C 760 (N.D. Ill. Oct. 3, 2006).

Plaintiffs then filed a second motion for class certification pursuant to Fed. R. Civ. P. 23(b)(2). Plaintiffs seek to certify the following classes:

(1) All current Hispanic and African-American [District] students who have been subjected to or continue to be subjected to the District's racial discrimination in student assignment and provision of programs and services resulting in instability of student assignments, assignment to non-neighborhood schools, assignment to overcrowded schools, transportation burdens, closure of Illinois Park School,

---

[1] This court granted defendant's motion to dismiss all claims regarding the District's alternative high school.

> program deficiencies in Limited English Proficiency ("LEP") services, or education deficiencies arising from the above conditions.

(2) All current Hispanic U-46 students who are receiving LEP services, or who have received LEP services by the District in the past four years, or who should have but did not receive LEP services, and who have been subjected to or continue to be subjected to deficiencies in the District's LEP services in the area of identification, exiting/transitioning, parent information, special education, or assignment to non-neighborhood schools.

Defendant opposes the motion, arguing that the named plaintiffs fail to satisfy the requirements of Rule 23(a) and Rule 23(b)(2). For the reasons discussed below, plaintiffs' motion for class certification is granted.

## FACTS

Plaintiffs

Plaintiffs are Hispanic and African-American students (and their parents as next friends) at elementary, middle, and high schools in the District. Plaintiffs attend ten different schools at various levels: one plaintiff attends pre-school; eight attend elementary school; three attend middle school; and six attend high school. Of the named plaintiffs, nine receive LEP services, one receives special education services, and two receive both LEP and special education services.

The three Montoya children are Hispanic and are enrolled at the elementary level. All three receive or have received LEP services from the District, and one child receives both LEP and special education services. The three Burciaga children are Hispanic, and all receive LEP services. Two are enrolled in middle school and one is enrolled in elementary school. The Sifuentes students are Hispanic; one is in high school and one is in elementary school.

3

According to plaintiffs, one Sifuentes child should have been identified for LEP services, but the District ignored Irma Sifuentes's requests for such services.

The McFadden children are African-American. One is enrolled in high school, one is enrolled in middle school, two are enrolled in elementary school, and one is enrolled in pre-school. One McFadden child also receives special education services. The three Ivy children are African-American; two attend high school and one is enrolled in elementary school.

District Data

Defendant District operates in Cook, DuPage, and Kane Counties and the communities of Bartlett, Carol Stream, Elgin, Hanover Park, Hoffman Estates, Schaumburg, South Elgin, St. Charles, Streamwood, Wayne, and West Chicago. During the 2004-05 school year, the District's total enrollment was approximately 38,429 students in 54 schools. Of those students, 46.5% were white, 38.6% were Hispanic, 7.3% were African-American, and 7.0% were Asian or Pacific Islander. 15.2% of all students were enrolled in LEP services.[2]

Plaintiffs allege that from the mid-1970s through the end of the 2003-04 school year, defendant closed schools in minority neighborhoods, and did not expand or build new schools in minority neighborhoods to accommodate increasing enrollment. In 2000, voters in the District approved a referendum for new school construction. Based on that referendum, defendant implemented a redistricting plan (the "Redistricting Plan"), effective at the beginning of the 2004-05 school year. The Redistricting Plan: (1) redefined attendance boundaries; (2) closed

---

[2] As the court has noted previously, this percentage, provided by the Illinois State Board of Education "2005 District Report Card" for District U-46, is significantly lower than the percentage reported for the previous school year, which was 24.6%.

Woodland Heights and Illinois Park Elementary Schools; and (3) constructed three new elementary schools and one new middle school, all in predominantly white neighborhoods. Six named plaintiffs from two families would have attended Illinois Park had it remained open; all six students are now attending elementary schools outside their own neighborhoods.[3] Additionally, as of the 2004-05 school year, approximately 50% of LEP students are involuntarily transported out of their neighborhoods to attend their assigned schools.

Allegations

Plaintiffs allege that both prior to and after the implementation of the Redistricting Plan, minority students in the District suffered and continue to suffer racial discrimination, including, but not limited to: (1) denial of stability in school assignments; (2) denial of assignments to schools in minority students' own neighborhoods; (3) assignment to overcrowded schools; (4) unequal transportation burdens; (5) closure of Illinois Park; and (6) denial of adequate LEP services, including bilingual special education.[4] Plaintiffs also allege that both before and after the redistricting plan, Hispanic LEP students suffered and continue to suffer from deficiencies in

---

[3]Plaintiffs state in the second amended complaint that Illinois Park reopened in January 2006 as an Early Learning Center for approximately 100 Hispanic LEP students. Plaintiffs do not, however, address how such reopening affects the named plaintiffs or their allegations concerning the proposed Hispanic LEP class.

[4]The second amended complaint alleges that all plaintiffs are required to attend schools in a district that maintains racially identifiable schools. In plaintiffs' response to defendant's motion to dismiss the second amended complaint, however, plaintiffs clarified that they were not "bringing a claim for racially identifiable schools...[T]he allegations of racially identifiable schools, along with within-school segregation and discriminatory discipline, are facts probative of a discriminatory environment, and therefore, of discriminatory intent with respect to the actual areas of school operations challenged in this case."

LEP services, including, but not limited to: (1) denial of proper access to special education referrals, evaluations, and services; (2) denial of timely and appropriate identification for LEP services; (3) premature removal from LEP programs and classes; (4) denial of sufficient information to parents of LEP students to allow informed consent for exit from LEP services; and (5) denial of assignments to neighborhood schools for Hispanic LEP students.

## DISCUSSION

Fed. R. Civ. P. 23, which governs class action suits, requires a two-step analysis to determine if class certification is appropriate. First, plaintiffs must satisfy all four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Harriston v. Chicago Tribune Co., 992 F.2d 697, 703 (7th Cir. 1993). These elements are a prerequisite to certification, and failure to meet any one of them precludes certification of a class. Second, the action must also satisfy one of the conditions of Rule 23(b). Joncek v. Local 714 Int'l Teamsters Health and Welfare Fund, 1999 WL 755051, *2 (N.D. Ill. Sept. 3, 1999). Specific to the instant case, the court may certify a class under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief of corresponding declaratory relief with respect to the class as a whole."

When evaluating whether a party has met its burden of proving that a class should be certified, this court should not consider the merits of the underlying claim, Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 166 (1974), but it is appropriate to "probe behind the pleadings."

General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982); see also Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 676 (7th Cir. 2001).

Rule 23(a)

In response to plaintiffs' second motion for class certification, defendant once again attacks plaintiffs' ability to certify the Rule 23(a) requirements. Defendant asserts that the second amended complaint contains no new claims and fails to identify any "general policy or practice by the District that is allegedly discriminatory." Defendant also argues that the named plaintiffs' claims have nothing in common besides "conclusory allegations" of racial discrimination, and that the affidavits of those named plaintiffs remain "cursory" and "generic."

Despite defendant's protestations, the court finds that plaintiffs have rectified the deficiencies this court found in the first motion for class certification. Specifically, the claims of the named plaintiffs are now tightly aligned with claims of the two defined classes; each claim is now matched to at least one named plaintiff. The court also finds that any previous conflict of interest that Mrs. Montoya and Mrs. McFadden may have had with other class members is eliminated by the addition of three new families as named plaintiffs. Finally, as will be discussed below, plaintiffs satisfy each requirement of Rule 23(a), as well as that of Rule 23(b).

*Numerosity*

Rule 23(a) requires plaintiffs to demonstrate that the members of the prospective class are so numerous as to make joinder impracticable. See, e.g., Parker v. Risk Management Alternatives, Inc., 206 F.R.D. 211, 212 (N.D. Ill. 2002). According to plaintiffs, there are

7

approximately 17,000 African-American and Hispanic students in the U-46 school district. While defendant is correct that not every minority student in the district will join the Minority class, this court may extrapolate the size of the class from plaintiff's statistics. See, e.g., Vergara v. Hampton, 581 F.2d 1281, 1284 (7th Cir. 1978). Further, the named plaintiffs have provided testimony that other parents and students share their grievances regarding defendant's discrimination on the basis of race. Based on that testimony and the sheer number of minority students in the district, the court finds that plaintiffs have satisfied Rule 23(a)(1) with respect to the Minority class.

As for the LEP class, there are 5700 LEP students in U-46, the vast majority of whom are Hispanic. Defendants claim that despite this high number, plaintiffs have not provided sufficient evidence of a large number of LEP class members. In support of this assertion, defendants state that it has not had a single due process complaint under the Individuals with Disabilities Education Act, 20 U.S.C. 1400 et seq. ("IDEA"), and that U-46 has made "significant academic progress" in the past several years. While defendant's claims may be true and commendable, they do not defeat plaintiffs' ability to satisfy Rule 23(a)(1) with respect to the LEP class. Once again, the court may use these statistics to extrapolate the approximate size of the LEP class. Given the large number of Hispanic LEP students in the district, and the testimony of named plaintiffs that there are other parents and children with similar grievances, the court finds that plaintiffs have satisfied the numerosity requirement with respect to the LEP class.

*Commonality*

Rule 23(a)(2) "requires the presence of questions of law or fact common to the class." Nauman v. Abbott Laboratories, 2007 WL 1052478, *2 (N.D. Ill. Apr. 3, 2007). With respect to the Minority class, defendant argues that plaintiffs made only general allegations of race discrimination. According to defendant, plaintiffs must allege a specific policy or practice that led to the alleged discrimination. Defendant fails to recognize, however, that plaintiffs have already done so. In its opinion of October 3, 2006, this court found that "[p]laintiffs have alleged not only a widespread practice of discrimination against minority students by defendant, but also that all injuries sustained by plaintiffs were the direct result of decisions made by members of the Board." Because plaintiffs have already identified a policy and practice, they have met the requirement of Rule 23(a)(2) with respect to the Minority class.

Similarly, plaintiffs have satisfied this requirement with respect to the LEP class. Plaintiffs allege that "the District failed to take 'appropriate action' to eliminate language barriers in its LEP services through its failure to adopt a formal program and failure to monitor the services it did provide," and that those failures "have resulted in deficiencies" in several areas. Contrary to defendant's claim that plaintiffs allege only individualized problems, plaintiff's allegations apply to the members of the LEP class as a whole.

*Typicality*

Claims of the named plaintiffs are "typical" as required under Rule 23(a)(3) if they arise from the same practice or course of conduct that gives rise to the class claims and are based on the same legal theory. Id. at *3. Typicality focuses "on whether the named representatives'

9

claims have the same essential characteristics as the claims of the class at large." De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983). As discussed above, the court has already found that plaintiffs allege discrimination arising from the same policies and course of conduct. Each class claim is also tied to a named plaintiff. With regard to the Minority class: Montoya and McFadden allege instability of assignments; Montoya alleges assignment to non-neighborhood schools; Ivy and McFadden allege overcrowded schools; Montoya alleges unequal transportation burdens; Montoya and McFadden allege discriminatory closure of Illinois Park School; Montoya, Sifuentes and Burciaga allege discriminatory provision of LEP services; and all named plaintiffs allege discrimination in educational quality and opportunities. With respect to the LEP class: Montoya and Burciaga allege deficiencies in LEP special education; Sifuentes alleges deficiencies in LEP identification; Burciaga alleges exiting and transitioning deficiencies; Montoya and Burciaga allege deficiencies in the provision of LEP information to parents; and Montoya alleges assignment to non-neighborhood schools for LEP services.

In its March 13, 2006 opinion, this court found that Montoya and McFadden might have been appropriate class representatives with respect to their specific claims, but that the claims of the classes as wholes went beyond the allegations of the named plaintiffs. With the second amended complaint, plaintiffs have connected each class allegation to a complaint of a named plaintiff. In doing so, they have satisfied the commonality requirement of Rule 23(a)(3) with respect to both the Minority class and the LEP class.

*Adequacy*

To be adequate class representatives under Rule 23(a)(4), the named plaintiffs must have a "sufficient interest in the outcome to ensure vigorous advocacy." Chapman v. Worldwide Asset Management, LLC, 2005 WL 2171168, *4 (N.D. Ill. Aug. 30, 2005). Rule 23(a)(4) also requires that the named plaintiffs not have interests that conflict with those of the class. Gammon v. GC Servs. Ltd. Partnership, 162 F.R.D. 313, 317 (N.D. Ill. 1995). Finally, plaintiffs' attorneys must be qualified, experienced, and able to conduct the litigation. Id.

As discussed above, the named plaintiffs in both the Minority class and the LEP class have a sufficient interest in the outcome of the instant case. Further, each claim alleged by the two classes is matched to at least one named plaintiff, ensuring that all class members are represented fully and fairly by the named representatives.

Defendant claims that McFadden and Montoya are not adequate representatives because they complain only about the closing of Illinois Park School. As this court has held previously, however, a "full and fair reading" of their deposition testimony reveals that their concerns go beyond Illinois Park School, and that neither family would be satisfied with remedies related only to that school. The court therefore finds that the named plaintiffs are adequate representatives of both the Minority and LEP classes.

Finally, plaintiffs' attorneys have extensive experience with class action cases and litigation regarding school districts. The attorneys have also provided for Spanish translation and has selected a permanent interpreter to assist with the instant case. The court therefore finds that the named plaintiffs and their counsel are adequate under the requirements of Rule 23(a)(4).

Rule 23(b)(2)

Certification under Rule (23)(b)(2) is appropriate when "[t]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Certification under Rule 23(b)(2) is "appropriate in civil rights cases seeking exclusively injunctive relief." Sherman ex. rel. Sherman v. Township High School Dist. 214, 540 F. Supp. 2d 985, 992 (N.D. Ill. 2008), citing Wallace v. Chicago Housing Authority, 224 F.R.D. 420, 431 (N.D. Ill. 2004).

The two proposed classes in the instant civil rights litigation seek only injunctive relief against defendant. Further, contrary to defendant's assertions, plaintiffs have indeed identified policies and practices leading to the harm alleged by both classes. For that reason, the court finds that certification is proper under Rule 23(b)(2).

## **CONCLUSION**

As discussed above, the court finds that plaintiffs have satisfied the class certification requirements of Fed. R. Civ. P. 23(a) and 23(b)(2). For that reason, the court finds that certification is proper under Rule 23(b)(2). The court certifies two classes defined as:

(1) All current Hispanic and African-American [District] students who have been subjected to or continue to be subjected to the District's racial discrimination in student assignment and provision of programs and services resulting in instability of student assignments, assignment to non-neighborhood schools, assignment to overcrowded schools, transportation burdens, closure of Illinois Park School, program deficiencies in Limited English Proficiency ("LEP") services, or education deficiencies arising from the above conditions.

(2) All current Hispanic U-46 students who are receiving LEP services, or who have received LEP services by the District in the past four years, or who should have but did not receive LEP services, and who have been subjected to or continue to be subjected to deficiencies in the District's LEP services in the area of

identification, exiting/transitioning, parent information, special education, or assignment to non-neighborhood schools.

This case is set for a hearing on status August 19, 2008, at 1:30 p.m., at which time the parties should be prepared to address class notice and final pretrial preparation.

**ENTER:** **August 8, 2008**

_____
**Robert W. Gettleman
United States District Judge**